# UNITED STATES DISTRICT COURT
# DISTRICT OF NEBRASKA

| | |
|---|---|
| MELANIE DAVIS, <br><br> *Plaintiff,* <br><br> v. <br><br> MIAMI STREET HOSPITALITY, LLC, <br><br> *Defendant.* | Case No. _____ <br><br><br> **COMPLAINT** <br><br> **Injunctive Relief Sought** |

Plaintiff Melanie Davis, by and through the undersigned counsel, brings this action against Miami Street Hospitality, LLC, a Nebraska limited liability company, for violations of the Americans With Disabilities Act, 42 U.S.C. § 12181, *et seq.* (the "ADA") and its implementing regulations, and allege as follows:

## INTRODUCTION

1.     Plaintiff brings this civil rights action against Defendant for failing to design, construct, and/or own or operate facilities that are fully accessible to, and independently usable by, persons with disabilities. Defendant has failed to remove architectural barriers in the hotel known as "Country Inn & Suites", even though such removal is readily achievable.

2.     The violations alleged in this complaint occurred at "Country Inn & Suites", located at 11818 Miami St, Omaha NE 68164.

3. Defendant's failure to provide equal access to "Country Inn & Suites" violates the mandates of the ADA to provide full and equal enjoyment of a public accommodation's goods, services, facilities, privileges, and advantages.

4. Defendant's conduct constitutes an ongoing and continuous violation of the law.

5. Accordingly, Plaintiff seeks a declaration that Defendant's facilities violate federal and an injunction requiring Defendant to make modifications to the facilities so that they are fully accessible to, and independently usable by, individuals with disabilities. Plaintiff further requests that the Court retain jurisdiction over this matter for a period to be determined to ensure that Defendant continues to comply with the relevant requirements of the ADA.

## JURISDICTION AND VENUE

6. Jurisdiction of this Court arises under 28 U.S.C. §§ 1331 and 1343(a)(3). This action includes federal law claims brought pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–12189. The Court has the jurisdiction to issue a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed R. Civ. P. 57.

7. Venue in this judicial district is proper because Defendant is located and transacts business within this judicial district and has sufficient contacts to be subject to personal jurisdiction in this judicial district, and because this is the judicial district in which the acts and omissions giving rise to the claims occurred.

## PARTIES

8.    Plaintiff Melanie Davis is a resident of the city of Nicollet, Minnesota. Plaintiff Davis grew up in Omaha, Nebraska and lived there until she moved to Minnesota in 2005. She travels to Omaha frequently to visit friends. She visits Omaha frequently, including three trips in 2016 and one in 2017.

9.    Plaintiff Melanie Davis suffers from, and all times relevant hereto has suffered from, Cerebral Palsy, a condition that substantially limits her ability to walk and stand, and is therefore a legal disability as defined by the ADA, 42 U.S.C. § 12102(2). Plaintiff is therefore a member of a protected class under the ADA, under the regulations implementing the ADA set forth at 28 C.F.R. § 36.101 *et seq.*, and under the MHRA. As a person with a disability, Plaintiff Davis has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

10.    Defendant Miami Street Hospitality, LLC, a Nebraska limited liability company, is the owner and operator of the real property and improvements which are the subject of this action, the hotel known as "Country Inn & Suites", a place of public accommodation within the meaning of the ADA, located at the street address of 11818 Miami St, Omaha NE 68164.

## FACTUAL BACKGROUND

11.    On June 9, 2016, Plaintiff Davis attempted to patronize the hotel known as "Country Inn & Suites" in Omaha, Nebraska. Plaintiff was in Omaha with her boyfriend, who also uses a wheelchair for mobility. Plaintiff

reserved an accessible hotel room through a third-party website, www.hotels.com.

12.     Upon arrival, Plaintiff found that there was no section of the reservation desk at a height appropriate for wheelchair users.

13.     A photograph in Exhibit A to this Complaint depicts the "Country Inn & Suites" registration desk as it appeared on June 9, 2016.

14.     Plaintiff also found no reserved accessible parking spaces in the "Country Inn & Suites" customer parking lot marked as van parking spaces.

15.     One of the parking spaces reserved for persons with disabilities had an access aisle that was in poor repair, making a transfer between her vehicle and wheelchair more difficult.

16.     Photographs in Exhibit B to this Complaint depict the reserved parking spaces in the "Country Inn & Suites" customer parking lot.

17.     As she completed registration, hotel staff assigned Plaintiff room 107, designated as an accessible room.

18.     Plaintiff found that the handheld shower head in room 107 was situated out of her reach.

19.     Plaintiff found that the metal pipe that drained water from the bathroom sink was not completely insulated.

20.     Plaintiff could not make a safe transfer to the toilet in room 107 due to the towel racks fixed to the wall close to the grab bars.

21.     Photographs in Exhibit C to this Complaint depict the bathroom in room 107 as it appeared on June 9, 2016.

22.    Room 107 was further inconvenient for Plaintiff and her boyfriend, as they both use wheelchairs for mobility and Plaintiff brought her service dog-in-training with them.

23.    Plaintiff requested a different accessible room from "Country Inn & Suites" staff.

24.    "Country Inn & Suites" staff told Plaintiff that there were no other accessible rooms available. Plaintiff asked whether the people in the other accessible rooms required or requested accessible features, but the employee did not know.

25.    A hotel guest who happened to be in an accessible room but did not need the accessible features overheard the conversation and offered to exchange rooms.

26.    "Country Inn & Suites" staff arranged the exchange of rooms, and Plaintiff and her boyfriend were then assigned room 102, which "Country Inn & Suites" classified as an accessible suite.

27.    Plaintiff found that the bathtub in room 102 lacked a faucet, and the shower lacked a hand-held faucet.

28.    Photographs in Exhibit D to this Complaint depict the room 102 shower and bathtub in "Country Inn & Suites" as it appeared on June 9, 2016.

29.    Plaintiff was unable to take a shower or bath in room 102, an issue exacerbated by the particularly hot weather in Omaha (it had been 96 degrees on June 9, 2016).

30.    That evening, Plaintiff requested that the hotel install a handheld shower head in room 102 so that she and her boyfriend could bathe. The hotel employee on duty informed them that this would be impossible to do immediately, but that she could leave a note for maintenance and the morning manager, and the issue could be resolved in the morning. Plaintiff agreed to the arrangement.

31.    The next morning, Plaintiff confirmed with the employee at the registration desk that the handheld shower head would be installed while they were out of the hotel visiting the Omaha Zoo. Plaintiff again agreed to the arrangement, and they left for the day.

32.    Upon their return, they found that that the shower head had not been replaced by an accessible, handheld alternative.

33.    Plaintiff inquired at the front desk, asking why the shower head had not been replaced after multiple requests and confirmations.

34.    The manager on duty responded that a plumber would be required, and that it would be impossible to get the shower head replaced that day.

35.    Plaintiff and her boyfriend informed the manager that such a project would not require a plumber, just the parts and someone to perform the fix.

36.    After some discussion, the manager offered to have it fixed later that evening. Plaintiff did not agree to this offer, after having had to switch rooms and spend much of her time making complaints, requests, and negotiations; and then following up on agreements when they went unfulfilled.

- 6 -

37.    Plaintiff then demanded a room at a different hotel. The manager said that the owner offered to give them a room at a different hotel owned by the same company. Plaintiff questioned whether the accessible features would be adequate, considering her situation at "Country Inn & Suites".

38.    The manager informed Plaintiff that the other hotel had recently undergone a renovation, whereas "Country Inn & Suites" had scheduled a renovation which had not yet happened.

39.    "Country Inn & Suites" eventually offered to pay for a third-party hotel room for the remainder of Plaintiff's stay in Omaha.

40.    In light of the architectural barriers at "Country Inn & Suites", Plaintiff Davis is deterred from visiting "Country Inn & Suites" in the future. Plaintiff Davis intends to return to "Country Inn & Suites" to patronize the facility, but these architectural barriers deter her from doing so. She plans to return and patronize "Country Inn & Suites" on her next trip to Omaha after she learns that the premises have been made fully accessible to persons who use wheelchairs for mobility.

41.    Plaintiff Davis travels to Omaha approximately once a year. She has visited once since her June, 2016 visit. Davis is contemplating moving back to Omaha within one or two years. She has searched for accessible homes in the area. She plans to continue visiting Omaha in the future and would enjoy being able to patronize Defendant's hotel.

42.    Plaintiff Davis attempted to access Defendant's premises, but could not do so independently on a full and equal basis because of her disabilities, due to the physical barriers to access and violations of the ADA that ex-

ist at Defendant's premises. As a result of Defendant's non-compliance with the ADA, Plaintiff Davis cannot independently access the facilities and/or is excluded from full and equal enjoyment of the goods, services, privileges, advantages, and/or accommodations offered therein.

## THE ADA AND ITS IMPLEMENTING REGULATIONS

43.    On July 26, 1990, President George H.W. Bush signed into law the ADA, 42 U.S.C. § 12101, *et seq.*, a comprehensive civil rights law prohibiting discrimination on the basis of disability. In its findings, Congress determined that, among other things:

a.  Some 43 million Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole grows older;

b.  Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, discrimination against individuals with disabilities continues to be a serious and pervasive social problem;

c.  Discrimination against individuals with disabilities persists in such critical areas as employment, public housing accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

d.  Individuals with disabilities continually encounter various forms of discrimination; and

- 8 -

e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our society is justly famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity.

42 U.S.C. § 12101(a)(1)–(3), (5), (9).

44.     Congress explicitly stated that the purpose of the ADA was to:

a. Provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities;

b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

c. Invoke the sweep of congressional authority, including the power to enforce the Fourteenth Amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by individuals with disabilities.

42 U.S.C. § 12101(b)(1), (2), (4).

45.     Title III of the ADA prohibits discrimination in the activities and facilities of places of public accommodation, and requires places of public accommodation to comply with ADA standards and to be readily accessible to, and independently usable by, individuals with disabilities. 42 U.S.C. § 12181–89.

- 9 -

46.    The ADA provided places of public accommodation one and one half years from its enactment to implement its requirements. The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 2181; 28 C.F.R. § 36.508(a).

47.    Pursuant to the mandates of 42 U.S.C. § 12134(a), the Department of Justice ("DOJ") promulgated federal regulations to implement the requirements of Title III of the ADA, which are codified at 28 C.F.R. Part 36. Appendix A of the 1991 Title III regulations (republished as Appendix D to 28 C.F.R. Part 36) contains the ADA Standards for Accessible Design, which were based upon the ADA Accessibility Guidelines ("1991 ADAAG") published by the Access Board on the same date. Public accommodations were required to conform to these regulations by January 26, 1992 (or January 26, 1993 if a business had 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181, *et seq.*; 28 C.F.R. § 36.508(a).

48.    In 1994, the Access Board began the process of updating the 1991 ADAAG by establishing a committee composed of members of the design and construction industries, the building code community, and State and local government entities, as well as individuals with disabilities.

49.    In 1999, based largely upon the report and recommendations of the advisory committee, the Access Board issued a notice of proposed rulemaking to update and revise the 1991 ADAAG.

50.    The Access Board issued final publication of revisions to the 1991 ADAAG on July 3, 2004.

- 10 -

51.    On September 30, 2004, the DOJ issued an advance notice of proposed rulemaking to begin the process of adopting the 2004 ADAAG revisions.

52.    On June 17, 2008, the DOJ published a notice of proposed rulemaking covering Title III of the ADA.

53.    The extended process of revising the 1991 ADAAG culminated with the DOJ's issuance of the 2010 Standards for Accessible Design ("2010 Standards"). The 2010 Standards incorporated the revised 2004 ADA Accessibility Guidelines ("ADAAG"), as well as the requirements contained in subpart D of 28 C.F.R. Part 36. The DOJ published the Final Rule detailing the 2010 Standards on September 15, 2010. The 2010 Standards became effective on March 15, 2011.

## FACTUAL ALLEGATIONS

54.    Defendant has discriminated against Plaintiff on the basis of her disabilities by failing to comply with the requirements of the ADA and the ADAAG with regard to "Country Inn & Suites". A specific, though not exclusive, list of unlawful physical barriers and ADA violations present at "Country Inn & Suites" which limit the ability of persons in wheelchairs to access the facilities and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, includes the following:

    a. The reservation desk at "Country Inn & Suites" did not have a section 36 inches or lower, in violation of ADAAG 227 and 904.4.

Plaintiff requires an accessible surface to make transactions, sign documents, review her bills, and make her payments.

b. Room 102, designated and assigned as an accessible hotel room with a wheelchair-accessible bathroom, lacked a hand-held shower head, and had no bathtub faucet whatsoever, in violation of ADAAG 224.2, 607.6, and 806.2.4. Plaintiff requires a hand-held shower head to bathe independently and safely.

c. The hand-held shower head in room 107 was placed more than 48 inches above the floor of the bathtub, in violation of 224.2 and 608.5. Plaintiff needs to be able to reach the shower head to bathe independently and safely.

d. The towel rack in room 107 was installed lower than 12 inches above the grab bar serving the toilet, in violation of ADAAG 224.2, 609.3, and 806.2.4.

e. The metal drain pipe under the sink was partially covered but not completely insulated, in violation of ADAAG 224.2, 606.5, and 806.2.4. Partially exposed drain pipes create the risk of touching the pipe and receiving a burn.

f. The access aisle adjacent to two reserved parking spaces in the "Country Inn & Suites" customer parking lot had broken asphalt, creating changes in level, in violation of ADAAG 208.2 and 502.4. Plaintiff requires a stable, level surface to make a safe transfer between her wheelchair and vehicle.

- 12 -

g.  No reserved parking space in the "Country Inn & Suites" customer parking lot was reserved as a van parking space, in violation of ADAAG 208.2.4 and 502.6.

55.    The above listing is not to be considered all-inclusive of the barriers and violations of the ADA encountered by Plaintiff or which exist at "Country Inn & Suites".

56.    In order to fully remedy the discriminatory conditions, Plaintiff requires an inspection of "Country Inn & Suites" in order to photograph and measure all such barriers to access and violations of the ADA and the ADAAG.

57.    Compliance with the ADA standards and the ADAAG is required by 42 U.S.C § 12182(b)(2)(A)(iv) because removal of architectural barriers is readily achievable. Compliance with the ADA standards and the ADAAG is readily achievable by Defendant due to the lack of difficulty and low cost of remedying the above-listed barriers. Some of the above-listed violations can be remedied through the same measures prescribed by federal regulation as examples of modifications that are "readily achievable", including, but not limited to, creating accessible parking spaces. 28 C.F.R. § 36.304(b).

58.    Compliance is also readily achievable due to the significant assistance available to businesses. Section 44 of the IRS Code allows a Disabled Access tax credit for small businesses with 30 or fewer full-time employees or with total revenues of $1 million or less, which is intended to offset the cost of undertaking barrier removal and alterations to improve accessibility. Section 190 of the IRS Code provides a tax deduction for businesses of all

sizes for costs incurred in removing architectural barriers, up to $15,000. *See ADA Update: A Primer for Small Business,* http://www.ada.gov/regs2010/smallbusiness/smallbusprimer2010.htm#tax (Mar. 16, 2011).

59.    As a person with a disability, Plaintiff Davis has a personal interest in having full and equal access to places of public accommodation and to the goods, services, facilities, privileges, advantages or other things offered therein.

60.    Without injunctive relief, Defendant's failure to remove accessibility barriers will continue to cause injury to Plaintiff, who will continue to be unable to independently access "Country Inn & Suites" and/or to enjoy the goods, services, privileges, advantages and/or accommodations offered therein on a full and equal basis, in violation of her rights under the ADA.

## FIRST CAUSE OF ACTION
### Violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*

61.    Plaintiff incorporates and realleges the above paragraphs.

62.    Section 302(a) of Title III of the ADA, 42 U.S.C. §§ 12101 *et seq.*, provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

- 14 -

63.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations that is equal to the opportunities afforded to other individuals.

64.     Defendant has discriminated against Plaintiff and others in that it failed to make its place of public accommodation fully accessible to persons with disabilities on a full and equal basis in violation of 42 U.S.C. § 12182(a) and the regulations promulgated thereunder, including the ADAAG, as described above. Plaintiff Davis has been denied full and equal access to "Country Inn & Suites" and/or has been denied the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations on a full and equal basis.

65.     Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. Defendant's violations of the ADA and ADAAG are ongoing.

66.     Defendant has failed to remove architectural barriers to full and equal access by Plaintiff Davis, even though removing the barriers is readily achievable.

67.     Plaintiff Davis plans to visit "Country Inn & Suites" again in the near future. Plaintiff is without adequate remedy at law, has suffered and is suffering irreparable harm, and reasonably anticipates that she will continue to suffer irreparable harm upon her planned return visit to "Country Inn & Suites" unless and until Defendant is required to remove the physical barri-

ers to access and ADA violations that exist at Defendant's place of public ac-
commodation, including those set forth specifically herein.

68.    This Court has authority under 42 U.S.C. § 12188 to grant Plain-
tiff injunctive relief, including an order requiring Defendant to make "Coun-
try Inn & Suites" readily accessible to and independently usable by
individuals with disabilities to the extent required by the ADA and ADAAG,
and/or to close "Country Inn & Suites" until such time as Defendant cures the
access barriers.

69.    Plaintiff has retained the undersigned counsel for the filing and
prosecution of this action, and is entitled to recover reasonable attorneys'
fees, litigation expenses and costs from Defendant, pursuant to 42 U.S.C.
§§ 12205, 12117, and 28 C.F.R. § 36.505.

**WHEREFORE**, Plaintiff respectfully requests:

    a. That the Court issue a Declaratory Judgment that determines
that Defendant's facilities, at the commencement of the instant
suit, are in violation of Title III of the ADA, 42 U.S.C. § 12181, *et
seq.*, and the relevant implementing regulations including the
ADAAG.

    b. That the Court issue a permanent injunction, pursuant to 42
U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.504(a), enjoining Defend-
ant from continuing its discriminatory practices; including an or-
der directing Defendant to make all readily achievable
alterations to its facilities so as to remove physical barriers to ac-

cess and make its facilities fully accessible to and independently usable by individuals with disabilities to the extent required by the ADA; and also including an order requiring Defendant to make all reasonable modifications in policies, practices or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis.

c. That the Court award Plaintiff her reasonable attorneys' fees, litigation expenses, and costs of suit pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, or as otherwise provided by law; and

d. That the Court issue such other relief as it deems just and proper, and/or is allowable under Title III of the ADA.

DATED:  April 10, 2017

[*signature block*]